IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA | | |
| | : | |
| v. | : | Criminal No. DKC 20-248-2 |
| | : | |
| ROBERT HOPKINS IV | | |
| | : | |

**MEMORANDUM and ORDER**

Robert Hopkins IV filed several overlapping motions: 1) a motion seeking a compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 119); 2) a motion for reduction of sentence under Amendment 821 (ECF No. 122); 3) a motion to correct a clerical error in his presentence report (ECF No. 124); 4) a motion for release to home detention (ECF No. 125), and 5) a letter requesting an updated/amended judgment to direct that the final portion of his sentence be served in home confinement (ECF No. 126). For the reasons that follow, all relief will be denied.

Mr. Hopkins was convicted of participating in a wire fraud conspiracy and aggravated identity theft. He, along with others, used various victims' stolen identities to open account receivable accounts, purchase merchandise, and fail to pay the account balance. He was sentenced on September 16, 2022, to a total of 51 months imprisonment followed by three-years' supervised release and ordered to pay $456,786.54 in restitution. The sentences were

27 months on count one and a mandatory 24 months consecutive on count two pursuant to a plea agreement under Fed.R.Crim.P. 11(c)(1)(C).  His current projected release date is March 7, 2026.

The sentencing guidelines for count one, the wire fraud conspiracy, were 33 to 41 months, based on offense level 20 and criminal history category I.  He had a single criminal history point from a conviction in 2013 for failure to return rental vehicle for which he received one-year unsupervised probation before judgment in the Circuit Court for Baltimore County, Maryland.  The guidelines for count 23 were the 24 months consecutive that were mandatory.  The sentence imposed was below the guidelines by 6 months.  Mr. Hopkins reports that the Baltimore County conviction was expunged on February 12, 2024.

Mr. Hopkins asserts that he should be released to care for his elderly father who requires a full-time caregiver.  He argues that he is "the only available caregiver" to care for his father, that he is not a danger to the community, that he has not incurred any disciplinary infractions while in the custody of the Bureau of Prisons ("BOP"), and that his crime was not violent.  He also contends that, due to the expungement of his prior conviction, he is now a "zero point" offender deserving of a two-level downward adjustment in his offense level due to the retroactive guideline

2

amendment 821. Consequently, he seeks an order to amend his pre-sentence report.

Ordinarily, a court may not alter a sentence after it is imposed. There are limited exceptions, however. One is pursuant to 18 U.S.C. § 3582(c)(1)(A), the compassionate release statute. Under that statute, a court may reduce a defendant's sentence if there are "extraordinary and compelling reasons" for the reduction that are "consistent with applicable policy statements issued by the Sentencing Commission," and the §3553(a) factors also support reduction. 18 U.S.C. § 3582(c)(1)(A).

> A district court analyzes a compassionate release motion in two steps. First, it determines whether the defendant is eligible for a sentence reduction. *See United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023). To be eligible, the court must find that relief is warranted because of "extraordinary and compelling reasons" and "consistent with applicable policy statements issued by the Sentencing Commission." [*United States v.*] *High*, 997 F.3d [181 (4th Cir. 2021)] at 186; see § 3582(c)(1)(A)(i). Second, the court considers whether the 18 U.S.C. § 3553(a) sentencing factors support relief. *Bond*, 56 F.4th at 384; § 3582(c)(1)(A)(i).

*United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024).

3

The Sentencing Commission adopted a new policy statement that was effective November 1, 2023:

> The Sentencing Commission has promulgated a policy statement, U.S.S.G. § 1B1.13, which attempts to define what may constitute "extraordinary and compelling reasons." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). The Sentencing Commission recently amended the policy statement. Effective November 1, 2023, the amended policy statement provides a non-exhaustive list of extraordinary and compelling reasons for reducing a sentence:
>
> (1) the medical circumstances of the defendant, U.S.S.G. § 1B1.13(b)(1);
>
> (2) the age of the defendant, U.S.S.G. § 1B1.13(b)(2);
>
> (3) family circumstances of the defendant, U.S.S.G. § 1B1.13(b)(3);
>
> (4) whether the defendant was a victim of abuse while incarcerated, U.S.S.G. § 1B1.13(b)(4);
>
> (5) "other reasons," U.S.S.G. § 1B1.13(b)(5); or
>
> (6) an unusually long sentence, if the defendant meets certain conditions, U.S.S.G. § 1B1.13(b)(6).

*United States v. Moore*, No. 4:15-CR-1, 2024 WL 4148646, at *2 (E.D. Va. Sept. 11, 2024). "Family circumstances" include the "incapacitation of the defendant's parent when the defendant would

be the only available caregiver for the parent." U.S.S.G.
§ 1B1.13(b)(3)(C). The specific conditions in subsection (6) are:

> If a defendant received an unusually long
> sentence and has served at least 10 years of
> the term of imprisonment, a change in the law
> (other than an amendment to the Guidelines
> Manual that has not been made retroactive) may
> be considered in determining whether the
> defendant presents an extraordinary and
> compelling reason, but only where such change
> would produce a gross disparity between the
> sentence being served and the sentence likely
> to be imposed at the time the motion is filed,
> and after consideration of the defendant's
> individual circumstances.

U.S.S.G. § 1B1.13(b)(6). No other change in the law may be
considered in determining whether an extraordinary and compelling
reason exists, but may be considered in determining the extend of
any reduction, if one is otherwise authorized.

At the time of sentencing, the court was aware of the health
situation of Mr. Hopkins' father and Mr. Hopkins' role in
caregiving for both of his parents, and delayed his surrender date
to give the family time to make alternate arrangements. While the
court is sympathetic to the concerns expressed, there are other
family members who are available, albeit maybe not a single full-
time caregiver. Nor does he satisfy the "overlong sentence"
criteria, having been sentenced to and having served well under

ten years.   Thus, Mr. Hopkins fails to satisfy the standard for immediate compassionate release.

Amendment 821 presents another, and a more complicated situation, for potential modification of sentence.   Under some circumstances, the vacating or expungement of a prior conviction after the initial sentencing presents grounds for reopening the sentence pursuant to a motion under 28 U.S.C. § 2255. "[A] defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated. *Custis v. United States*, 511 U.S. 485 (1994); *Daniels v. United States*, 532 U.S. 374 (2001)." *Johnson v. United States*, 544 U.S. 295, 303 (2005).   Such a motion would have to be filed within one year of the date on which the sentence was vacated, and a petitioner would have to have "shown due diligence in seeking the order" vacating the conviction.   *Id*. at 302.   Mr. Hopkins did not file such a motion and, in reality, his sentence was not "enhanced" due to the prior conviction.   Rather, he seeks to avail himself of the retroactive guideline amendment for zero-point offenders. That effort fails, however, because of the limitations inherent in the provisions.

Title 18 U.S.C. § 3582(c)(2) provides that a court may modify/reduce the sentence of a defendant who was "sentenced to a

6

term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," if the reduction is consistent with the sentencing factors in 18 U.S.C. § 3553(a) and the applicable policy statements of the Sentencing Commission. In addition, a defendant is only eligible for relief if an amendment to the Sentencing Guidelines has been made retroactively applicable. *Dillon v. United States*, 560 U.S. 817, 826 (2010).

Part B of Amendment 821 retroactively affects those who have zero criminal history points and who have none of the specified aggravating factors.[1] For those who qualify, there is a two-level reduction in the offense level. As noted above, Mr. Hopkins had one criminal history point at the time of his initial sentencing. The question, then, is whether the subsequent expungement[2] of the prior conviction may be considered.

---

[1] Because Mr. Hopkins is not eligible for sentence reduction, it is not necessary to assess whether he would be disqualified because he personally caused substantial financial hardship.

[2] An "expunged" conviction is not counted for criminal history purposes pursuant to 4A1.2(j), but the term "expunge" is not defined. It may well be that expungement under Maryland law for successful completion of probation does not qualify as "expungement" for guideline purposes. *Robinson v. United States*, No. 14-CR-0568-CCB, 2020 WL 5074408, at *2 (D. Md. Aug. 25, 2020).

Section 1B1.10 (b)(1) of the Sentencing Guidelines—which governs § 3582(c)(2)—provides as follows:

> In determining whether, and to what extent, a reduction in the defendant's term of imprisonment . . . is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (d) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

At least one court has determined that later expungement by a state court may not be considered:

> A reduction is only permissible, per the Sentencing Guidelines, if "the guideline range applicable to [a] defendant has subsequently been lowered as a result of a[ ] [retroactive] amendment to the Guidelines Manual." *Id.* § 1B1.10(a)(1) (emphasis added). The Guidelines thus do not contemplate or authorize "plenary resentencing proceedings." *Dillon v. United States*, 560 U.S. 817, 827 (2010). Here, [defendant's] guideline range has not "been lowered as a result of a[ ] [retroactive] amendment to the Guidelines Manual," U.S.S.G. § 1B1.10(a)(1), but as a result of New York's decision to expunge [his] convictions for certain offenses. Except to the extent authorized by Amendment 821, he is therefore ineligible to benefit from the resentencing procedures provided for in § 3582(c)(2).

8

*United States v. Padilla*, No. 16 CR. 317-04 (PAE), 2024 WL 749566, at *6 (S.D.N.Y. Feb. 23, 2024). The determination under USSG § 4A1.1(c) that the prior conviction scored a single point must remain unchanged. Mr. Hopkins is ineligible for modification of his sentence under Amendment 821.[3]

Mr. Hopkins' motion to correct a clerical error in his presentence report (ECF No. 124) must be denied. There is no "error" in his report. Rather, there has been a subsequent change in the status of a prior conviction. Even if there were some matter to be remedied, he would need to seek relief through the BOP administrative process.

> BOP Program Statement 5800.11, Inmate Central File, Privacy Folder, and Parole Mini-Files, . . . provides a framework for BOP to use when an inmate challenges information in his file. It states:
>
>> c. Inmate Challenge to Information. An inmate may challenge the accuracy of the information in his or her Inmate Central File. Unit team staff shall take reasonable steps to ensure the accuracy of challenged information, particularly when that information is capable of being verified. The inmate is required to provide staff with sufficient information in support of a challenge (names of

---

[3] Also as noted before, Mr. Hopkins was sentenced below the guideline range as a result of his "C" plea. His sentence is at the low end of the range for offense level 18, which is two levels under the range established at the time of sentencing.

persons to contact, government agency, etc. . . . .)

When an inmate provides such information, staff shall review the alleged error(s) and take reasonable steps to ensure the information is correct.

For example, if an inmate challenges information in the Presentence Investigation Report (PSI), staff should inform the appropriate U.S. Probation Office (USPO) in writing of the disputed information, and request that a written response also be provided. **USPO procedures, however, do not allow for changes or addendums to be made to the Presentence Investigation Report after sentencing since it is a court document.**

If the USPO subsequently reports that the challenged information, or some part thereof is not accurate, staff shall attach the Bureau's inquiry and the USPO response to the challenged document. Staff shall file this information in the applicable section of the Inmate Central File, and also make notation on the Inmate Activity Record form (BP-381) to ensure that future decisions affecting the inmate are not based on the discredited information.

When the USPO verifies that the information in the PSI is indeed inaccurate, as claimed by the inmate, staff should subsequently review, and where indicated, correct Bureau generated reports or data such as the Inmate Load and Security Designation form (BP-337), the Custody Classification form (BP-388), Progress Report, and any other reports that may have been based on

10

>           the PSI. Bureau reports, data, or SENTRY
>           transactions should be corrected within
>           a reasonable period of time after
>           identification as being inaccurate.

*Gosier v. Mitchell*, No. C/A 3:09-931-JFA-JRM, 2010 WL 619175, at

*2-3 (D.S.C. Feb. 18, 2010).

Finally, his requests for placement on home detention (ECF

No. 125) and letter requesting permission to serve the remainder

of the sentence under home confinement (ECF No. 126) must also be

denied.  Mr. Hopkins is under the BOP's authority until he is

released.  Consequently, the court lacks jurisdiction.  18 U.S.C.

§ 3624(c)(1) reads:

>           The Director of the Bureau of Prisons shall,
>           to the extent practicable, ensure that a
>           prisoner serving a term of imprisonment spends
>           a portion of the final months of that term
>           (not to exceed 12 months), under conditions
>           that will afford that prisoner a reasonable
>           opportunity to adjust to and prepare for the
>           reentry of that prisoner into the community.
>           Such conditions may include a community
>           correctional facility.

The BOP, rather than the district court, has the authority to

designate the place of a prisoner's confinement.  *United States v.*

*Bryant*, 720 F.Supp. 3d 450, 455 (W.D.Va. 2024).  The court declines

to alter the Judgment Order.

For the foregoing reasons, all of Mr. Hopkins' requests will be denied, and it is this 2nd day of April, 2025, by the United States District Court for the District of Maryland, ORDERED that:

1.    The motion for compassionate release (ECF No. 119); the motion for reduction of sentence under Amendment 821 (ECF No. 122); 3) the motion to correct a clerical error in his presentence report (ECF No. 124); 4) the motion for release to home detention (ECF No. 125), and (5) the letter request for an updated/amended judgment to direct that the final portion of his sentence be served in home confinement (ECF No. 126) filed by Defendant Robert Hopkins IV, BE, and the same hereby ARE, DENIED; and

2.    The Clerk IS DIRECTED to transmit a copy of this Order to Mr. Hopkins and to counsel of record.


<u>                    /s/                    </u>
DEBORAH K. CHASANOW
United States District Judge